# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| LINDA KEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV416-207 |
| | ) | |
| THE BOARD OF TRUSTEES | ) | |
| OF THE THREE RIVERS | ) | |
| REGIONAL LIBRARY | ) | |
| SYSTEM, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Three motions are currently before the Court in this employment compensation dispute: defendant's Motion to Dismiss, plaintiff's Motion to Amend, and plaintiff's Motion for a Protective Order. Docs. 4, 11 & 17. The first is before the district judge while the latter two will be reached here. For the purpose of this Order, the Court will accept as true the facts lifted from the filings cited here.

## I. BACKGROUND

The Three Rivers Regional Library System (Three Rivers) employed Linda Kean as a salaried regional director. Doc. 1 at 2. She resigned on July 22, 2014, and on July 22, 2016, brought this Fair Labor

Standards Act (FLSA) action against Three Rivers for, *inter alia*, unpaid overtime, 29 U.S.C. § 201 *et. seq.*[1]  Doc. 1 at 1-3.  Her chief complaint is that Three Rivers violated its "comp time" promise to her:

> Where a [Three Rivers] worker exceeded 40 hours in a work week, that employee could bank "comp time", as he or she could not be paid overtime. [Three Rivers] credited KEAN with comp time for periods where her weekly recorded time exceeded forty hours.  It would then apply the comp time where she failed to work forty hours in a week.  If KEAN failed to work the requisite hours during a pay period, she suffered a reduction in her pay where she did not have available comp time.

Doc. 1 at 3 ¶ 8.

Despite its comp time policy, defendant "unlawfully failed and refused to give [plaintiff] comp time credit for all overtime hours worked in violation of the FLSA . . . ."  Doc. 1 at 8 ¶ 25.  "Other similarly situated employees in the past, including the former director, were paid for their unused comp time when they terminated their position."  Doc. 11 at 1

---

[1]  As recently explained:

> The FLSA requires employers to pay employees "engaged in commerce or in the production of commerce" overtime when an employee works more than 40 hours in a week.  29 U.S.C. § 207(a)(1).  But an exemption from the overtime pay requirement exists for employees in a "bona fide executive, administrative, or professional capacity," as defined by regulations of the Secretary of Labor. 29 U.S.C. § 213(a)(1).

*Knight v. Beall's Outlet Stores, Inc.*, 2017 WL 149810 at * 2 (S.D. Ga. Jan. 13, 2017). Three Rivers insists that Kean worked in an "exempt" position.  Doc. 5 at 2 ¶ 6.

(citing doc. 1 ¶¶ 6-8, 20). She wants "damages in the amount of her respective unpaid overtime compensation plus liquidated damages as provided by the FLSA 29 U.S.C. § 216(b)." Doc. 1, ¶ 26. She also seeks damages for contract-breach, retaliation,[2] and Three Rivers' failure to provide a health-insurance continuation notice. *Id.* at 9-13.

## II. ANALYSIS

### A. Nomenclature

In its Motion to Dismiss, Three Rivers argues that Kean sued an entity incapable of being sued (*i.e.*, she misnamed the defendant) and that her FLSA, overtime, and other claims are time-barred. Doc. 4 at 2. It also raises other defenses (*e.g.*, she was not an exempt FLSA employee and her contract claim is facially flawed). *Id.* at 3-22.

---

[2] In a later filing she explains:

> During her tenure, Plaintiff spoke out publicly about a Board member for a number of issues, including apparent financial irregularities, mistreatment of staff and failure to adhere to Open Meetings requirements. (Doc 1 ¶ 9). Later when she proposed resignation and payment of her unused time per the company's own course or business and the law, Three Rivers resisted and ultimately blocked these payments because the accused Board member was angry with her for speaking out against him. (Doc 1 ¶¶ 10-20). She filed suit against Three Rivers arising from its retaliatory termination of her and refusal to pay accrued comp time and annual leave in accordance with the law. (Doc 1 ¶¶ 1-41).

Doc. 11 at 1-2.

Kean opposes that motion, but for good measure moves to amend her Complaint[3] so she can clear up any confusion about defendant's name. Doc. 11. Defendant says its proper name is "the Board of Trustees of the Three Rivers Regional Library System." Doc. 12 at 2. This Court has called it the "Three Rivers Regional Library System" in the past. *Haven v. Regional Library System Board of Trustees*, 69 F.Supp.3d 1359, 1361 (S.D. Ga. 2014). Keen cites that case and other examples to show that Three Rivers has never been confused about such "name-slippage." In any event, she wants her Amended Complaint's claims to relate back to the date of her Complaint -- as noted above, she filed this case two years to the day of her resignation, though Three Rivers nevertheless contends that she is too late.[4] Doc. 12 at 3.

---

[3] As another court explains:

> Although leave to amend should be granted liberally, there are some limitations. For example, leave to amend need not be granted if it "constitutes an exercise in futility." Additional factors that weigh against granting leave to amend include: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [and] undue prejudice to the opposing party by virtue of allowance of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

*In Re Kim*, 2016 WL 7385721 at * 9 (D. Guam Dec. 16, 2016) (quotes and cites omitted).

[4] It is either two or three years:

Defendant opposes: "Despite being the Director for nearly five (5) years, and actually reporting to the Board of Trustees, the Plaintiff wrongfully named Three Rivers Regional Library System instead of the Board of Trustees of the Three Rivers Regional Library System as the party Defendant." Doc. 12 at 2. It doesn't want to lose its limitations defense over the misnaming (*i.e.*, it reasons that if the Court agrees that Kean named the wrong defendant, she'll be too late with her claims, due to the statute of limitations, with the "right" defendant). *Id.* at 2-3.

This Court does not cotton to "namesmanship." *Willis v. Mayor & Alderman of the City of Savannah*, 770 F. Supp. 2d 1349, 1351 (S.D. Ga. 2011) (civil rights plaintiffs were entitled to amend their complaint to denominate city as defendant in its proper corporate name, where city

---

Under 29 U.S.C. § 255(a), FLSA claims -- including claims for unpaid overtime compensation -- must ordinarily be brought "within two years after the cause of action accrued." However, if a plaintiff's cause of action arises out of a defendant's "willful" violation of FLSA, the plaintiff may commence suit within three years after his cause of action accrued. An employer "willfully" violates FLSA when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 13 (1988). Mere negligence will not suffice -- if an employer acts unreasonably, but not recklessly, in determining its obligations to an employee under FLSA, its conduct is not "willful" and the default two-year statute of limitations will apply. *Id.* at 135 n. 13.

*Kirkland-Brown v. Amelia Island Care Center*, 2012 WL 2178854 at * 2 (M.D. Fla. June 13, 2012).

had history of using its cumbersome, archaic name to trip-up litigants, and there was no evidence of prejudice), cited in GA. PRAC. & PROC. § 4:3 n. 4 (2016-2017 ed.).  Here the defendant exploits the same sort of name-clunkiness in an obvious trip-up attempt.  It does *not* claim any sort of identity confusion, only that Kean failed to call it "*the Board of Trustees* of the Three Rivers Regional Library System," rather than "The Three Rivers Regional Library System."  *See also* doc. 14 at 2-4 (citing past examples where no such confusion arose).

In that respect, Kean has moved to amend early enough in this litigation to correct her misstep,[5] and has shown that it was not the function of a deliberate attempt to sow (much less exploit) identity confusion.  Nor is there any hint that the defendant will suffer prejudice; not being able to exploit a limitations defense due to misnomer is not recognized as legal prejudice in this context.  *See Jones v. Waters*, 97 F.R.D. 543, 544 (E.D. Pa. 1983) (civil rights case defendant permitted to amend answer to add limitations defense, although a year had elapsed since the original answer had been filed; plaintiff had failed to allege any

---

[5]  Correcting the defendant's name, for example, cannot reasonably be imagined to incur new discovery quests and obligations.  Nor will a slumbering entity be shockingly awakened to the fact that it's just been sued.

specific prejudice, and "the proceedings [had] not progressed beyond the pleading stage and no discovery [had] been taken.").

The Court thus **GRANTS** plaintiff's motion to amend. Doc. 11. *Willis*, 770 F. Supp. 2d at 1351; *Mahdy v. Mason City School District*, 2017 WL 25504 at * 2 (S.D. Ohio Jan. 3, 2017) (granting plaintiff who sued the "Mason City School District" leave, under Fed. R. Civ. P. 15(a), to instead name the district's Board of Education); *Moody v. Co II Shoults*, 2016 WL 4443172 at * 1 (M.D. Ga. Aug. 19, 2016). The above-caption has been amended, the Clerk is **DIRECTED** to amend the docket caption accordingly, and all subsequent filings shall conform.

### B. Kean's Deposition

Defendant wants to take Kean's deposition in Georgia; she now lives and works in Pennsylvania. Doc. 17 at 1. The parties fought over what she called a short-timed deposition notice requiring her to miss work, drive through potential snow and ice, and have her holiday season squeezed (ultimately for a December 20, 2016 deposition in Savannah, Georgia, formally noticed by Three Rivers). Doc. 17; doc. 18 at 9. They conferred but Three Rivers refused to consider a video deposition, so it noticed the December 20th deposition (triggering Kean's December 19,

2016 Motion for a Protective Order, doc. 17), noted Kean's no-show and eve-of-deposition protective order motion, and now seek costs. Doc. 18 at 1-3. Three Rivers correctly notes that Kean did not move the Court for an Order directing a remote-means deposition, doc. 18 at 3 (citing Fed. R. Civ. P. 30(b)(4)), though she seeks one now. Doc. 17 at 8-9.

"[A] plaintiff generally is subject to deposition in the district in which the suit was brought, even if he or she resides elsewhere. The deposition of a defendant generally will be taken at his or her place of residence or, for corporate parties or witnesses, at the corporation's principal place of business. But these are just general guidelines, and the court may enter a protective order designating a different location (or allowing the witness to testify by remote transmission) in order to protect against undue burden or expense." 1 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY, Rule 30 (footnotes omitted).

The Court has been down this road before. *See, e.g., Hernandez v. Hendrix Produce, Inc.*, 297 F.R.D. 538, 539 (S.D. Ga. 2014) (depositions of Mexican migrant workers requested by produce company in migrant workers' FLSA action against produce company would be held over internet communication service, rather than in person in Georgia, which

was forum for action and residence of produce company, where it would cost migrant workers about $15,000 to travel from Mexico to attend depositions, migrant workers were economically disadvantaged, and, according to produce company, the language barrier between parties would have made written or telephone depositions difficult). Kean is no migrant worker, suffers no language barrier, and in fact "works for [a] school system." Doc. 17 at 1.

But there is no dispute that, though she filed this case in this district, she now lives in Pennsylvania, the demanded deposition fell within the holiday season, and that it would have cost her lost-work time, travel expense and other problems (missed medical appointments, etc.). Doc. 17 at 2-4. Courts use terms like "substantially justified" in evaluating failures to appear for a properly noticed deposition. *Marcelle v. American Nat. Delivery, Inc.*, 2009 WL 4349985 at * 3 (M.D. Fla. Nov. 24, 2009); *Functional Products Trading, S.A. v. JITC, LLC*, 2013 WL 4482507 at * 3 (N.D. Ga. Aug. 20, 2013). Compared to other cases, Kean's reasons do *not* meet the substantial justification threshold.

Still, plaintiff's last-minute motion for a protective order put Three Rivers on notice *not* to incur a stenographer expense the next day (doc.

18 at 3), in that she made it clear she would not attend. *Compare Alvarado v. Rainbow Inn, Inc.*, 312 F.R.D. 23, 33-34 (D.D.C. 2015) (vague request to reschedule that failed to affirmatively declare no-show intent was not enough to avoid non-appearance sanction). It does not matter that such a motion does not excuse non-attendance.[6] When Three Rivers received her protective-order motion (informing it that Kean "has communicated her inability to appear personally for a [deposition] in Savannah during December, 2016," doc. 17 at 3), it had all it needed to move this Court to compel her deposition and seek fees/costs for doing so. It did not need to run up expenses at that point (it seeks "fees *and costs* associated with the preparation for and attendance at the December 20, 2016 deposition that [Kean] failed to attend," doc. 18 at 12 (emphasis added)).

Three Rivers partially prevails here because Kean failed to timely move this Court for a protective order, much less one requesting a remote deposition protocol. But she can ask now. Three Rivers objects:

---

[6] *See Kelly v. Old Dominion Freight Line, Inc.*, 376 F. App'x 909, 913 (11th Cir. 2010) ("The district court's inaction on a party's motion for a protective order to postpone the taking of his deposition does not relieve the party of the duty to appear for the deposition.") (citing *Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979)).

While a remote deposition may make sense where the only information sought are recollections from the witness' mind -- they are logistically cumbersome and difficult in cases where -- as is the case here -- Counsel intends to examine Ms. Kean about documents relevant to the case.

This is so because it is difficult, remotely, to ensure that every party to the deposition is focused on the same document at the same time because it is hard to see what a witness is looking at without being physically present in the same room. Also, there is nothing prohibiting the witness from failing to select and view the proper document at the proper time without the direction of interrogating counsel. Further, should Three Rivers request that Ms. Kean mark documents, it would be difficult to see such markings via remote means. A remote deposition offers no guarantees or safeguards against improper conduct by the witness such as crib notes or signaled answers. Lastly, a remote deposition does not as easily allow Counsel or Three Rivers' representative to evaluate the demeanor and mannerisms of Ms. Kean.

Doc. 18 at 10-11.

These objections are joined by other articulated shortcomings:

Business litigation is typically document-intensive, and the use of multiple documents at a remote deposition requires the questioner to decide on all the documents he will use (and their order) well in advance of the deposition. This is very limiting, as a good questioner will not adhere to a rigid outline, but will adjust his questions and their order to the responses of the deponent. Further, experienced questioners find that witnesses (and particularly adverse or hostile witnesses) will more readily yield admissions to a live questioner. Most practitioners agree that remote depositions are best suited for shorter depositions and depositions of less important witnesses. Where a deposition is taken remotely, the Rule specifies that the deposition is deemed to be taken in the locality where the deponent gives the answers.

> This would apparently require the reporter to be at the site of the deponent, although this may be modified by agreement.

3 Bus. & Com. Litig. Fed. Cts. § 24:13 (4th ed. 2016) (footnotes omitted).

And there are good counter-arguments,[7] especially since witnesses typically are not intellectually impaired, and thus can be directed to mark an exhibit and show it to the web cam on their PC or laptop.[8] *See Lopez v. CIT Bank, N.A.*, 2015 WL 10374104 at * 2 (N.D. Cal. Dec. 18, 2015) ("Modem videoconference software permits participants to quickly and conveniently share documents and images with each other. For instance, Google's Hangouts software permits a conference call participant to broadcast a live video feed of a digital document while she reviews that document on her computer, which allows for the convenient joint review of specific pages contained within complicated documents."); *see also Carrico v. Samsung Electronics Co., Ltd.*, 2016 WL 1265854 at

---

[7]  For example, cameras and video-streaming are now so inexpensive that multiple cameras can be used to video side angles and thus capture signaling, "crib-note-coaching," etc. To that end, the parties are encouraged to stipulate to informal (thus cost-saving) video methods. *See* Fed. R. Civ. P. 29(a) ("a deposition may be taken before any person, at any time and place, on any notice, and in the manner specified -- in which event it may be used in the same way as any other deposition. . . .").

[8]  "Skype is now used to facilitate many a human interaction," including parent-child visitation orders, marriages and depositions where travel cost is prohibitive. *Hernandez*, 297 F.R.D. at 540-41 (citing *Young v. Young*, 2013 Ark. App. 707 (Ark App. 2013), *Tshiani v. Tshiani*, 208 Md. App. 43, 56 A.3d 311, 321-22 (Md. App. 2012) and *Yu Hui Chen v. Chen Li Zhi*, 971 N.Y.S.2d 139, 140 (N.Y.A.D. Sept. 11, 2013)).

* 1 (N.D. Cal. Apr. 1, 2016) ("courts have noted that leave to conduct depositions by telephone should be liberally granted and that a desire to save money constitutes good cause to depose out-of-state witnesses through remote means. The burden is on the opposing party to show how they would be prejudiced.") (cites omitted).

But this is not an extraordinary case like *Hernandez*. And, as noted *supra*, there are enough issues (retaliation, exempt-employee status, timeliness) in play to expect a fairly comprehensive (if not document-heavy) deposition of a *party,* as opposed to a "less important witness." To rule for Kean, then, is to advance something neither the national rules drafters nor this Court's local rules committee[9] have yet entertained: A general policy presuming remote depositions to be the norm, and "in person" only upon a good cause showing. Kean must come to this district for her deposition.

Meanwhile, plaintiff offers no reason for failing to timely move for a protective order. On the other hand, there is no evidence of bad faith (much less recklessness or dismissiveness) and undue-expense-causing

---

[9] *See Lopez*, 2015 WL 10374104 at * 2 ("The court is persuaded that Defendants have violated the undersigned's standing order by refusing Plaintiffs' request to hold a face-to-face discussion about whether all future depositions should be taken by remote means.").

conduct on Kean's part -- Three Rivers surely knew that she would not appear for the deposition that it had formally noticed, so it was pointless and wasteful to bring in a stenographer and run up that expense. Three Rivers therefore is entitled to half of its attorney fees and (non-stenographer) costs for responding to Kean's protective-order motion and, in effect, moving to compel her deposition. *See* Fed. R. Civ. P. 37(d)(3) (permitting the Court to deny an award of fees where the award would be unjust); *Atkinson v. Volusia County School Board*, 2016 WL 6524410 at * 3 (M.D. Fla. Nov. 3, 2016).[10]

The parties shall, within 14 days of the date this Order is served: (1) confer again and agree on a remote deposition at 100% Kean's expense (otherwise, she must travel to this venue, before the February 27, 2017, close of discovery, doc. 20, and the parties shall bear the normal

---

[10] On motions to compel

> [p]ayment of expenses (including attorney's fees), typically, is mandatory when, "after giving an opportunity to be heard," courts grant motions to compel. Fed. R. Civ. P. 37(a)(5)(A). Only if (1) "the movant filed the motion before attempting in good faith to obtain the . . . discovery without court action;" (2) the failure to respond was justified; or (3) "other circumstances make an award of expenses unjust, may a court decline to award expenses to a prevailing party." *Id*.

*Ajibade v. Wilcher*, 2017 WL 119474 at * 3 (S.D. Ga. Jan. 10, 2017). The motion here is for a protective order, but the same standard and result applies because there is no doubt that Three Rivers would have moved to compel Kean's deposition.

deposition expenses); and (2) attempt informal resolution of the just-awarded, Three Rivers' Rule 37(d)(3) expenses, short of which they may return here for judicial resolution (in which case, Three Rivers must then file an itemized list of expenses and fees so the Court can evaluate their reasonableness and issue an expense award, *see Alvarado*, 312 F.R.D. at 34 (cost computation methodology)).

## III. CONCLUSION

To summarize, the Court **GRANTS** plaintiff Linda Kean's Motion to Amend, doc. 11, **DENIES** her Motion for Protective Order, doc. 17, and awards the defendant partial fees and costs. The above caption has been amended to reflect the defendant's full name, the Clerk is **DIRECTED** to amend the docket caption accordingly, and all subsequent filings shall conform.

Finally, the Court is informed by the Clerk that this case was erroneously set-up in the Savannah Division of this Court (as denoted by the above caption), when it should have originated and stayed in the Brunswick Division -- as correctly noted by the caption in the parties' pleadings. Accordingly, the Clerk shall **TRANSFER** this case to that Division.

**SO ORDERED**, this 26th day of January, 2017.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA